UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cincinnati Insurance Company,                      File No. 19-cv-1025 (ECT/TNL)

    Plaintiff & Counter-
    Defendant,

v.                                                 **OPINION AND ORDER**

Rymer Companies, LLC, *a/k/a* Rymer
Companies, Inc., and Cannon Falls Mall,
Inc.,

    Defendants & Counter-
    Claimants.

---

Anthony J. Kane, Hilary Hannon, and Jessica K. Allen, Pfefferle Kane LLP, Minneapolis, MN, for Plaintiff and Counter-Defendant Cincinnati Insurance Company.

Bradley K. Hammond and Alexander M. Jadin, Smith Jadin Johnson, PLLC, Bloomington, MN, for Defendants and Counter-Claimants Rymer Companies, LLC and Cannon Falls Mall, Inc.

---

      This insurance-coverage case involves the interplay of an insurance appraisal panel award and the Minnesota Building Code. It is on remand from an Eighth Circuit Court of Appeals decision reversing the entry of summary judgment on the causation issue in favor of the insurer. After remand, the parties engaged in additional discovery and now bring new summary-judgment motions. Because the appraisal award underlying the parties' dispute is ambiguous, however, summary judgment in either party's favor is not warranted. The appraisal panel must clarify its award and make additional findings, if necessary.

I[1]

After a storm damaged the roof of the Cannon Falls Mall in 2018, the Mall's owners—two business organizations that will be referred to together as "Rymer"—submitted a claim to the Mall's insurer, Cincinnati Insurance Company. Rymer asked for more than $1.7 million to replace the roof. Cincinnati believed that the storm did not cause all the damage Rymer claimed and offered just under $11,000. An appraisal panel ultimately determined that the storm caused $23,226 worth of damage to the Mall's roof.

The appraisal award is a single page, stating that the item "Mall roof repair" had a "Loss Replacement Cost" of $23,226 and a "Loss Actual Cash Value" of the same amount. ECF No. 28-1. The award does not detail the extent of the repair or what damage the panel found to support the loss amount. *Id.*

Rymer's counsel emailed the panel the day after the award's issuance, seeking clarification of the award. Hammond Aff. [ECF No. 33] Ex. B [ECF No. 33-1] at 153.[2] This email asked the panel's members "how to tie" the amount awarded "to the information the parties presented." *Id.* Both Kurt Ehlers, the panel's umpire, and Kevin Baker, one of the panel members, responded to this request. Ehlers explained that the panel's award covered "[m]ain roof cap flashing repair on 5 locations," and attached diagrams identifying the locations. *Id.*; *see also id.* at 159–60 (diagrams). Baker, whom Rymer appointed to

---

[1] A full recitation of the facts may be found in the previous order on the first iteration of the parties' cross-motions for summary judgment. ECF No. 64.

[2] Citations are to ECF pagination, not a document's original pagination.

2

the panel, wrote that the "repair was calculated at the lineal footage of the cap flashing and going into the field of the roof 10ft." Hammond Aff. Ex. D [ECF No. 33-2] at 28.

Rymer applied for a building permit to repair the damage to the cap flashing that the appraisal panel identified, which in Rymer's view required some replacement or repair to the surface of the Mall's roof. Goodhue County denied the application because the applicable Building Code[3] did not allow localized repairs to a roof in the condition of the Mall's, but rather required the replacement of the entire roof. Rymer then demanded another appraisal, contending that the County's decision meant that the policy's Ordinance or Law provision required Cincinnati to pay to replace the roof. Cincinnati refused and brought this declaration-of-coverage action to clarify its obligations under the policy.

In early 2021, the parties filed cross-motions for summary judgment on the issue of whether the storm caused the enforcement of the Building Code, which would trigger the policy's Ordinance or Law provision. Determining that causation was lacking, the Court granted Cincinnati's motion for summary judgment and denied Rymer's cross-motion. ECF No. 64. Rymer appealed.

The Eighth Circuit reversed, holding that "the tornado was a but-for cause of the County's enforcement of the ordinance," and that the policy therefore "covers the cost of replacing the mall's roof." *Cincinnati Ins. Co. v. Rymer Cos., LLC*, 41 F.4th 1026, 1029

---

[3]   The parties now agree that the building code section at issue is 2020 Minn. Bldg. Code § 1511.3.1.1, *available at* https://codes.iccsafe.org/content/MNBC2020P1 (emphasis in original). In pertinent part, this section prohibits a "roof recover . . . [w]here the existing roof or roof covering is water soaked or has deteriorated to the point that [it] is not adequate as a base for additional roofing." *Id.*

(8th Cir. 2022). The appellate court remanded "for further proceedings, including any necessary fact finding, consistent with this opinion." *Id.* at 1032. After that remand, and based on the appellate opinion, the parties were directed to address three issues:

> (1) whether "the requested repairs were a roof recover under the Building Code," [*Rymer*,] 41 F.4th at 1028 n.4; (2) any other facts relevant to "causation or the application of § 1511.3.1.1," *id.* at 1032 n.11; and (3) "[t]he amount of additional costs imposed by § 1511.3.1.1," *id.* at 1032 n.9.

ECF No. 86 at 1–2.

After conducting limited discovery, the parties once again cross-move for summary judgment. Rymer seeks partial summary judgment, arguing that the appellate opinion mandates replacing the Mall's roof, which requires another appraisal at which the appraisal panel can determine what additional costs the building code enforcement obligates Cincinnati to pay. Cincinnati disagrees, contending that the Eighth Circuit's decision authorized a reconsideration of the case *ab initio*. Cincinnati asserts that summary judgment in its favor is warranted because the evidence establishes that the original appraisal panel's award did not require any repair of the roof that would have triggered enforcement of the building code.

II

Resolution of this case requires interpretation of the appraisal award. Decades of caselaw applies the Minnesota Uniform Arbitration Act to insurance appraisal awards, setting forth a framework that courts have repeatedly invoked when examining those awards. *See, e.g.*, *Herll v. Auto-Owners Ins. Co.*, 879 F.3d 293, 295–96 (8th Cir. 2018) (applying arbitration principles to insurance-appraisal award).

4

A recent Minnesota Supreme Court decision, however, has cast doubt on the application of the Minnesota Uniform Arbitration Act to insurance appraisal awards. *Oliver v. State Farm Fire & Cas. Ins. Co.*, 939 N.W.2d 749 (Minn. 2020). In *Oliver*, the Minnesota Supreme Court examined whether an appraisal conducted pursuant to Minnesota's Standard Fire Insurance Policy, Minn. Stat. § 65A.01, subd. 3, was governed by the procedures in the Minnesota Uniform Arbitration Act, specifically the Arbitration Act's 90-day limit on motions to modify an award. *Id.* at 751 & n.2. Noting the differences between arbitration awards and appraisal awards, the court held that "the appraisal process under the Minnesota Standard Fire Insurance Policy is not an 'agreement to arbitrate' under section 572B.03 of the Minnesota Uniform Arbitration Act." *Id.* at 753. Therefore, the 90-day limit for modification motions did not apply to the insurance appraisal award. *Id.*

There is no logical justification for limiting *Oliver*'s holding to appraisals conducted under the Minnesota Standard Fire Insurance Policy. *See Savanna Grove Coach Homeowners' Ass'n v. Auto-Owners Ins. Co.*, No. 19-CV-1513 (ECT/TNL), 2020 WL 3397312, at *2 (D. Minn. June 19, 2020). Although the appraisal here was not conducted under Minnesota's fire-insurance statute, *Oliver*'s holding means that the Minnesota Uniform Arbitration Act's procedures are not necessarily applicable to the interpretation of the award.

What *Oliver* means for the interpretation of appraisal awards is less clear. Before the *Oliver* decision, courts applying Minnesota law routinely looked to arbitration principles to determine the appropriate scope of judicial review. This makes sense, because both arbitration and insurance appraisals seek to quickly resolve disputes without judicial

5

intervention, requiring finality and deference to those awards. *See Cournoyer v. Am. Television & Radio Co.*, 249 Minn. 577, 580 (1957) (finding that if more-extensive judicial review of arbitration awards were permitted, those proceedings, "instead of facilitating the settlement of controversies, would serve but to delay the final determination of the rights of the parties"); *see also* Hammond Aff. Ex. A [ECF No. 33-1] (Policy) at 52 ("A decision agreed to by any two [appraisal panel members] will be binding.").

Under arbitration principles, not only is judicial review of awards limited, but ambiguity in the award requires resubmission of the claim to the panel "to consider whether to modify or correct the award . . . to clarify the award." Minn. Stat. § 572B.20(d)(3); *see Hilltop Constr., Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 240 (Minn. 1982). "A reviewing court is 'prohibited from ignoring the ambiguity and summarily affirming the award.'" *Herll*, 879 F.3d at 296 (quoting *Menahga Educ. Ass'n v. Menahga Indep. Sch. Dist. No. 821*, 568 N.W.2d 863, 869 (Minn. Ct. App. 1997)).

Courts have long found that appraisal awards, like arbitration awards, "will not be vacated unless it clearly appears that it was the result of fraud or because of some misfeasance or malfeasance or wrongdoing on the part of the appraisers." *Robertson v. Boston Ins. Co.*, 184 Minn. 470, 470 (1931).

> When an award has been made, in apparent compliance with the terms of submission, every reasonable presumption in its favor must be indulged, and judicial finding of its invalidity cannot be made without indubitable proof from qualified witnesses that the award was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers.

6

*St. Paul Fire & Marine Ins. Co. v. Eldracher*, 33 F.2d 675, 678 (8th Cir. 1929) (quotation omitted); *compare Cournoyer*, 249 Minn. at 580 (noting that an arbitration award "will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying his own theory, misconduct, or other disregard of duty"). And as in arbitrations, the testimony of appraisers may be used only to determine whether the award was the result of fraud or mistake, or whether the appraisers acted outside the scope of the award. *Eldracher*, 33 F.2d at 679.

At least when it comes to determining whether an appraisal award is ambiguous and, if so, how to resolve that ambiguity, the better answer is that the Minnesota Supreme Court will continue to apply the same principles it has always applied, even though the source of at least some of those rules is the Minnesota Uniform Arbitration Act. This is so primarily because arbitration awards and appraisal awards share an important underlying policy—the quick and final resolution of disputes without judicial intervention. And they share standards for setting aside awards. Important here, the restrictions on an arbitrator's after-the-fact testimony apply to the insurance-appraisal context. In both situations, "[t]he award should be interpreted from the language used therein rather than the testimony of one of the [appraisers] as to what they meant to do by the award." *Grudem Bros. Co. v. Great W. Piping Corp.*, 213 N.W.2d 920, 924 (Minn. 1973). Here, then, the parties' reliance on post-award statements from members of the appraisal panel that purport to explain the scope of the award is misplaced.

Rymer points to the email appraiser Baker sent the day after the award, stating that the panel found damage to the flashing and "into the field of the roof 10ft." Hammond

7

Aff. Ex. D at 28.  In connection with its current motion, Cincinnati submitted two identically written affidavits from the other two panel members stating that they did not award damages for repairs to the Mall's roof surface, but only for replacement of the metal cap flashing itself.  ECF Nos. 98, 99.  Because "the testimony of an [appraiser] cannot be used to vary or add to the terms of an award," consideration of these after-the-fact statements is not permitted.  *Grudem Bros.*, 213 N.W.2d at 924.

The parties' dispute regarding the meaning of the appraisal award raises another issue, even if consideration of the panel's post-award statements were appropriate.  The award found a loss amount but did not otherwise specify what was damaged, or more importantly for purposes of § 1511.3.1.1, how such damage would be remedied.  That the award was $20,000 more than the cost to replace only the metal cap flashing itself would seem to indicate that other parts of the roof required repair or replacement as a consequence of the flashing repair.  And the Eighth Circuit determined unequivocally that the storm caused the application of the Building Code, while also noting that additional facts may be adduced on remand that could affect that causation determination.  *Rymer*, 41 F.4th at 1032 n.11.  The appellate court's holding, together with the dispute among the panel members regarding what the repairs would entail, creates an ambiguity in the appraisal panel's award.  The panel must clarify it.  *Herll*, 879 F.3d at 295–96.

The proper course here is to seek the guidance of the appraisers once again, to specifically determine whether the loss they previously found included any repair or involvement of the roof itself.  If repairing the flashing necessitates some intrusion onto

the surface of the roof—in the language of § 1511.3.1.1, a "roof recover"—the panel should also determine the cost of replacing the roof, as § 1511.3.1.1 requires.

### ORDER

Therefore, based on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion for Partial Summary Judgment [ECF No. 91] is **DENIED**.

2. Plaintiff's Motion for Summary Judgment [ECF No. 96] is **DENIED**.

3. The parties are **DIRECTED** to submit this matter to the appraisal panel for clarification of the previous award and further proceedings as outlined above.

4. This case is **STAYED** pending the panel's determination. The parties shall provide a joint status report on the progress of the proceedings before the appraisal panel within three months of the date of this order and every three months thereafter.

Dated: June 20, 2023                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court