UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cincinnati Insurance Company,

        Plaintiff & Counter-
        Defendant,

v.

Rymer Companies, LLC, *also known as*
Rymer Companies, Inc., and Cannon Falls
Mall, Inc.,

        Defendants & Counter-
        Claimants.

File No. 19-cv-1025 (ECT/TNL)

**OPINION AND ORDER**

---

Anthony J. Kane, Hilary Hannon, and Jessica K. Allen, Pfefferle Kane LLP, Minneapolis, MN, for Plaintiff and Counter-Defendant Cincinnati Insurance Company.

Alexander M. Jadin and Bradley K. Hammond, Smith Jadin Johnson, PLLC, Bloomington, MN, for Defendants and Counter-Claimants Rymer Companies, LLC and Cannon Falls Mall, Inc.

---

Defendants—two business organizations that will be referred to together as "Rymer"—claim that an ordinance-or-law provision requires Plaintiff Cincinnati Insurance Company to pay for the cost of replacing their mall's roof. Whether the ordinance-or-law provision was triggered depends on the scope of an appraisal award. After the appraisal award was returned to the panel for clarification, the panel clarified that Rymer's covered loss did not include damage or require repairs to the field of the roof.

Rymer moves for summary judgment, seeking to interpret the award based on deposition testimony of the appraisers. Cincinnati moves to confirm the award. Because

the unambiguous award may not be interpreted based on the appraisers' deposition testimony, and absent a motion to vacate, the appraisal award must be confirmed as clarified.

I

The case's facts have been described in several prior orders. *See Cincinnati Ins. Co., v. Rymer Cos.*, No. 19-cv-1025 (ECT/TNL), 2021 WL 1928465, at *1–4 (D. Minn. May 13, 2021), *rev'd and remanded*, 41 F.4th 1026 (8th Cir. 2022); *Cincinnati Ins. Co. v. Rymer Cos.*, No. 19-cv-1025 (ECT/TNL), 2023 WL 4088401, at *1–2 (D. Minn. June 20, 2023); ECF No. 123 at 1–4. Nonetheless, a brief summary is helpful. Rymer owned a mall in Cannon Falls, Minnesota. After a storm damaged the Mall, Rymer filed an insurance claim. An appraisal panel awarded $23,226 to repair damage to the Mall's roof. Rymer applied for a building permit to repair portions of the roof, but Goodhue County denied the application because the roof was wet. According to Rymer, the County's denial of its building permit triggered an ordinance-or-law provision requiring Cincinnati to pay for the cost of replacing the entire roof.

The Eighth Circuit Court of Appeals held that "Rymer's covered loss requires repairs that cannot be made without additional costs imposed by a law that was not enforceable until the covered loss necessitated repairs." *Cincinnati Ins. Co. v. Rymer Cos.*, 41 F.4th 1026, 1032 (8th Cir. 2022). But in a footnote, the Eighth Circuit observed the following:

> Cincinnati suggests the appraisal award was solely for damages to cap flashing and argues Rymer already repaired the damaged cap flashing legally without a permit. But Rymer

> presented evidence that the award also covered repairs to "the field of the roof" and that the County rejected such repairs. Thus, when viewed in the light most favorable to Rymer, the appraisal award covered the repairs that triggered the County's enforcement of the Building Code.

*Id.* at 1030 n.6. Based on this footnote, there was at least one question to be resolved on remand—did the appraisal award cover the repairs that triggered the County's enforcement of the building code? Because the appraisal award was ambiguous, the appraisal panel was directed to clarify the award by "specifically determin[ing] whether the loss they previously found included any repair or involvement of the roof itself." *Cincinnati Ins. Co.*, 2023 WL 4088401, at *4.[1] The appraisal panel said no. *See* ECF No. 116 at 4–5.

Normally, that would be the end of it. But Rymer was understandably suspicious. *See id.* at 1–3. The parties' competing cap-flashing estimates (submitted to the appraisal panel) were $2,706.92 and $3,513.90. *See* ECF No. 123 at 8. But the appraisal panel awarded $23,226 for the item "Mall roof repair." ECF No. 28-1. It was difficult to

---

[1]     On remand, Rymer argued that "the only issue remaining is the disputed cost to [replace the entire roof]." ECF No. 104 at 2. I disagreed. The Eighth Circuit did not reverse and remand with directions to enter judgment in favor of Rymer. And it "d[id] not address what facts may or may not be proven on remand and what effect, if any, those findings may have on causation." *Cincinnati Ins. Co.*, 41 F.4th at 1032 n.11. Whether the appraisal award covered repairs that triggered the County's enforcement of the building code was one such fact to be determined on remand. Rymer also argued that "the scope of the Appraisal Award unambiguously include[d] repairs to the field of the roof." ECF No. 104 at 2. Again, I disagreed. "The award found a loss amount but did not otherwise specify what was damaged, or more importantly for purposes of § 1511.3.1.1, how such damage would be remedied." *Cincinnati Ins. Co.*, 2023 WL 4088401, at *4. The appraisal award just stated that the item "Mall roof repair" had a "Loss Replacement Cost" of $23,226 and a "Loss Actual Cash Value" of the same amount. ECF No. 28-1. Without more detail, it could not be determined from the award whether it covered damage or repairs to the field of the roof.

reconcile those numbers.  Moreover, the initial appraisal award was unanimous, while the appraisal award clarification was not.  *Compare* ECF No. 28-1, *with* ECF No. 116 at 4–5. Rymer requested an evidentiary hearing or depositions of the appraisal panel.  ECF No. 120 at 15.  The request was granted in part; the parties were authorized to depose the appraisal panel to afford Rymer an opportunity to investigate possible vacatur-worthy problems with the appraisal award clarification.  *See* ECF No. 123 at 10.  The appraisers' deposition testimony reflects the only new development since the most recent order in this case.  *See* ECF No. 123 at 1–4.

## II

The starting point is whether to confirm the appraisal award as read in conjunction with the appraisal award clarification.  A recent Minnesota Supreme Court decision has cast doubt on the application of the Minnesota Uniform Arbitration Act to insurance appraisal awards.  *Oliver v. State Farm Fire & Cas. Ins. Co.*, 939 N.W.2d 749, 754 (Minn. 2020) (holding that the Act "does not apply to the appraisal process under the Minnesota Standard Fire Insurance Policy").  However, courts in this District have continued to apply "the traditional rules for interpreting appraisal awards."  *Maplebrook Ests. Homeowner's Ass'n v. Hartford Fire Ins. Co.*, No. 21-cv-1532 (SRN/DJF), 2023 WL 5021164, at *10 (D. Minn. Aug. 7, 2023) (collecting cases); *see also Blueberry Bowl, LLC v. Midwest Fam. Mut. Ins. Co.*, No. A23-0739, 2023 WL 4043806, at *2 (Minn. Ct. App. June 13, 2023) ("[T]he supreme court's decision in *Oliver* does not suggest that the district court cannot confirm or modify an appraisal award.").

Under those traditional rules, an unambiguous appraisal award "must be enforced by the Court unless [it is] the result of fraud, malfeasance, or other wrongdoing." *Fenske v. Integrity Prop. & Cas. Ins. Co.*, No. 22-cv-679 (JRT/DJF), 2023 WL 186595, at *2 (D. Minn. Jan. 13, 2023). An appraisal award "will not be vacated unless it clearly appears that it was the result of fraud or because of some misfeasance or malfeasance or wrongdoing on the part of the appraisers." *Robertson v. Bos. Ins. Co.*, 239 N.W. 147, 147 (Minn. 1931). "[T]he burden of the assault rests with the attacking party, and to prevail he must establish the fraud or other ground relied upon by clear allegations and proof. The award will not be lightly set aside." *McQuaid Mkt. House Co. v. Home Ins. Co.*, 180 N.W. 97, 98 (Minn. 1920). This burden is substantial because "appraisal awards are 'attended with every presumption of validity.'" *Maplebrook Ests.*, 2023 WL 5021164, at *10 (quoting *Mork v. Eureka-Sec. Fire & Marine Ins. Co.*, 42 N.W.2d 33, 38 (Minn. 1950)).

A different set of rules applies when an appraisal award is ambiguous. A reviewing court may not ignore ambiguity "and summarily affirm[] the award." *Herll v. Auto-Owners Ins. Co.*, 879 F.3d 293, 296 (8th Cir. 2018) (quoting *Menahga Educ. Ass'n v. Menahga Indep. Sch. Dist. No. 821*, 568 N.W.2d 863, 869 (Minn. Ct. App. 1997)). Instead, ambiguous appraisal awards are generally resubmitted to the appraisal panel for clarification. *Maplebrook Ests.*, 2023 WL 5021164, at *10. An appraisal award is ambiguous when it is "reasonably susceptible of more than one interpretation." *Herll*, 879 F.3d at 296 (quoting *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997)).

5

With these governing standards in mind, turn to the appraisal award clarification. The original appraisal award did not "detail the extent of the repair or what damage the panel found to support the loss amount," and therefore it was ambiguous whether the award "included any repair or involvement of the roof itself." *Cincinnati Ins. Co.*, 2023 WL 4088401, at *1, *4. The clarification form submitted to the appraisal panel included three questions. ECF No. 116 at 4–5. Relevant here, the first two questions asked the appraisal panel to clarify whether the appraisal award covered repairs or damage to the surface of the Mall's roof. *Id.* The appraisal panel said no. The appraisal panel's answers resolved any relevant ambiguity in the appraisal award by clarifying that the award did not cover the scope of repairs in Rymer's application to the County. Therefore, if the clarification stands, the appraisal award did not trigger the ordinance-or-law provision. And the unambiguous appraisal award (as clarified) must be enforced unless it is "the result of fraud, malfeasance, or other wrongdoing." *Fenske*, 2023 WL 186595, at *2.

But Rymer has not moved to vacate the award, or some portion of the award. To the contrary, Rymer expressly disclaims that it is moving to vacate or modify the award. ECF No. 139 at 1 ("Neither party has sought or now seeks to vacate, modify, correct, or otherwise change the Appraisal Award."); *id.* at 4 ("Rymer agrees the Appraisal Award is binding on both parties . . . ."). When questioned at oral argument, Rymer reiterated that its motion for summary judgment should not be construed as a motion to vacate.

Instead, Rymer argues that the appraisers' deposition testimony should be relied on to interpret the appraisal award. According to Rymer, "after the appraisal panel failed to clarify the Appraisal Award, this Court authorized depositions of the members of the

appraisal panel to clarify the panel's positions." ECF No. 135 at 3. That's not right. A quotation from the order granting discovery is instructive:

> To the extent Rymer seeks the testimony of the appraisers to interpret the scope of the appraisal award, it must be repeated that "[t]he award should be interpreted from the language used therein rather than the testimony of one of the [appraisers] as to what they meant to do by the award." *Cincinnati Ins. Co.*, 2023 WL 4088401, at *3 (quoting *Grudem Bros. Co. v. Great W. Piping Corp.*, 213 N.W.2d 920, 924 (Minn. 1973)). However, Rymer also contends that "irreconcilable differences between the Appraisal Award and the Appraisal Award Clarification gives rise to the possibility of fraud, misfeasance, malfeasance, or wrongdoing by appraisal panel members." ECF No. 120 at 10. Depositions of the appraisers could lead to discoverable evidence relevant to this latter inquiry. *See St. Paul Fire & Marine Ins. Co. v. Eldracher*, 33 F.2d 675, 678 (8th Cir. 1929).

ECF No. 123 at 6–7. In other words, depositions were not authorized to interpret the award. And Rymer has provided no authority—from this District, Minnesota, secondary sources, or elsewhere—to demonstrate that extrinsic evidence may be considered to interpret an ambiguous appraisal award, let alone an unambiguous award. In the absence of such authority, the unambiguous appraisal award will be interpreted and enforced according to its plain text.[2] *See Fenske*, 2023 WL 186595, at *2.

---

[2]     Rymer suggested at oral argument that the deposition testimony may be considered to interpret the appraisal award because of a stipulation. The parties agreed "that the Court shall serve as fact finder to the extent that resolution of the parties' motions requires a determination of fact." ECF No. 131 ¶ 4. But interpretation of an unambiguous appraisal award is not a factual issue. Regardless, agreeing for the Court to act as a factfinder is different than stipulating to what facts may be considered during the factfinding process. And Cincinnati clearly does not share Rymer's understanding of the parties' stipulation. *See* ECF No. 140 at 4 n.2.

Because Rymer has not moved to vacate the unambiguous award, Cincinnati's motion will be granted. "[T]he burden of the assault rests with the attacking party, and to prevail he must establish the fraud or other ground relied upon by clear allegations and proof." *McQuaid Mkt. House Co.*, 180 N.W. at 98; *see Mork*, 42 N.W.2d at 38 (same). With no motion to vacate, citations to the applicable law, or identification of facts in the record that would support vacatur, Rymer cannot meet its heavy burden to "establish the fraud or other ground relied upon by clear allegations and proof." *Mork*, 42 N.W.2d at 38.

Even assuming courts have the authority to *sua sponte* vacate an appraisal award under Minnesota law, that would be unwise here. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Courts "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." *Id.* (alterations in original) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). At oral argument and in briefing, Rymer expressly disclaimed that its summary judgment motion should be construed as a motion to vacate. Without vacatur having been presented by the parties, vacating *sua sponte* would exceed the Court's role as a neutral arbiter. Moreover, vacatur would likely result in remand to an appraisal panel, a result requested by no party that would further extend this drawn-out case. *See* Jordan R. Plitt et al., *Couch on Insurance* § 213:71 (3d ed. June 2024 Update)

(describing procedure after vacatur).  And Cincinnati would lose its opportunity to meaningfully respond to vacatur on the merits.[3]

ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.    Defendants' Motion for Summary Judgment [ECF No. 134] is **DENIED**.

2.    Plaintiff's Motion to Confirm Arbitration Award [ECF No. 137] is **GRANTED**.

3.    The action is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  October 21, 2024                    s/ Eric C. Tostrud
                                           Eric C. Tostrud
                                           United States District Court

---

[3]    It seems debatable whether vacatur-worthy grounds are present on this record.  For example, the deposition testimony raises questions about the propriety of the umpire's "no" vote on the appraisal panel clarification.  ECF No. 133-4 at 23:1–7 ("Q. All right.  And your recollection of the deliberation, though, is that the small roof repair contemplates more than simply cap flashing.  A. Correct.  Q. It contemplates some repairs not the field of the roof? A. Yes."); *id.* at 46:22–24 ("Q. You said no because you didn't take a position during the original appraisal?  A. Correct."); *id.* at 66:2–4 ("[B]ased upon my testimony today . . . I would say there would be some repair needed to be done [to the field of the roof]."); *id.* at 66:13–19 ("I wasn't fully on for a full roof replacement for 120 linear feet of cap flashing" because "it's egregious to replace a whole roof based upon . . . [t]hat limited amount.").  From this testimony, one might reasonably question whether the umpire properly fulfilled or exceeded the scope of his duties when breaking the tie.  The absence of a vacatur motion makes it unnecessary to address these issues.